CAPPADONNA ELECTRICAL MANAGEMENT, Metro Electric, Durrant Architect, Inc., J–III Concrete Company, Inc., Commercial Roofing Systems, et al., Appellants,

v.

CAMERON COUNTY, Appellee.

**In re Cappadonna Electrical Management, et al.**

Nos. 13–05–165–CV, 13–04–578–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Dec. 1, 2005.

■

Beth Watkins Squires, David P. Benjamin, Brent A. Biggs, O'Connell & Benjamin, Ricardo R. Reyna, Thomas A. Mailloux, John A. Guerra, Robert A. Pollom, Brock & Person, PC, K. Blake Coffee, Shelton & Valadez, Nissa M. Dunn, Crofts & Callaway, San Antonio, Clay E. Coalson, Donnell, Abernethy & Kieschnick, PC, Lawrence A. Coffey, Frank E. Weathered, Dunn & Weathered, Corpus Christi, Fred L. Shuchart, M. Lane Lowrey, Jessica Moore, Johnson, Ferguson, Pipkin & Phillips, Martin S. Schexnayder, Steve Sonsik Hwang, Houston, Joe Gamez, Donnell, Aberneth & Kieschnick, PC, Keith C. Livesay, Liza Michelle Vasquez, Roerig Olivera & Fisher, LLP, Gary R, Gurwitz, Daniel G. Gurwitz, Atlas & Hall, McAllen, Miguel Salinas, Ewing Edben Sikes III, Royston, Razor, Vickery & Williams, Brownsville, Noe Reyes, Robert Moran, R.E. Lopez, Jr., Lopez Peterson, PLLC, Rene Carlo Beñavides, Laredo, Craig A. Nevelow, Lisa M. Doering, Wright & Greenhill, P.C., Richard Ellis, III, Timothy B. Poteet, Austin, Moises R. Hernandez, Hernandez Law firm, Edinburg, Roger C. Davie, Ray, Valdez, McChristian & Jeans, El Paso, Cindy A. Garcia, The Garcia Law Firm, P.C., Jaime Balli, Harlingen, for appellants.

Benigno Trey Martinez, Martinez, Barrera & Martinez, Brownsville, Jane M.N. Webre, Scott, Douglass McConnico, L.L.P., Austin, for appellee.

John E. Pipkin, Johnson, Ferguson, Pipkin & Phillips, Houston, for Landmark Organization.

Before Chief Justice VALDEZ and Justices HINOJOSA and GARZA.

## OPINION

Opinion by Chief Justice VALDEZ.

This dispute originally arose between Cameron County and Landmark Organization, L.P., a general construction contractor, in connection with damages allegedly sustained by the County following the construction of a new county jail complex. Cameron County, when filing suit against Landmark, also sued various subcontractors ("the Subcontractors")[1] under claims of negligence, negligence per se, breach of express warranty, and breach of fiduciary duty. Landmark then filed claims for contribution and indemnity against the Subcontractors, who in turn filed cross-claims for contribution and indemnity against Landmark.

Landmark and the Subcontractors both filed motions to compel arbitration. On October 29, 2004, respondent, the Honorable Abel C. Limas of the 404th District Court of Cameron County, Texas, signed an order (1) denying the Subcontractors'

---

1. The Subcontractors, who are appellants in Cause No. 13–04–578–CV and relators or real-parties-in-interest in Cause No. 13–05–165–CV, are the following parties: AFG Industries, Inc.; Al Cardenas Masonry and System Firealarm CCTV Central Systems; Buell Doors, d/b/a Total Opening System; Cappadonna Electrical Management; Coastal Engineering; Commercial Roofing Systems; Cornerstone Detention Products; CTO, Inc.; Di Stefano/Santopetero Architects, Inc.; Durrant Architect, Inc.; Eberle Materials; J–III Concrete Company, Inc.; L & G Concrete; Lyon Metal Products; MacLaird Glass Company; Metro Electric; Pearland Industries, Inc.; Raba–Kistner Consultants; Rio Grande Steel, Ltd.; Strategis Equipment/Gernsbacher; Thirlwall Sheet Metal Company; Toft/Wolff/Farrow, Inc.; Toman & Associates; Tri–City Steel and Fabrication, Inc.; and Zarate Suspended Ceilings, Inc.

motions to compel arbitration, (2) granting Landmark's motion to compel arbitration with the County, and (3) severing the County's claims against Landmark into a separate lawsuit.[2] The order did not specify whether the Subcontractors' claims regarding arbitration were governed by the Federal Arbitration Act ("FAA") or the Texas General Arbitration Act ("TAA").

The Subcontractors then filed two parallel proceedings seeking relief from the October 29 order. In order to invoke this Court's jurisdiction for an appeal under the FAA, the Subcontractors filed a petition for writ of mandamus, docketed as Cause No. 13–05–165–CV. Also, in order to invoke this Court's jurisdiction for an appeal arising under the TAA, the Subcontractors filed an interlocutory appeal, docketed as Cause No. 13–04–578–CV. In accordance with the instructions of the supreme court for such cases, we will consolidate the two proceedings and render a decision disposing of both simultaneously, thereby conserving judicial resources and the resources of the parties. *See In re Valero Energy Corp.*, 968 S.W.2d 916, 917 (Tex.1998).

Most of the Subcontractors involved in the case have filed separate briefs; however, because the briefs raise the same contentions and arguments, we will address them all together.

## Jurisdiction

We first must consider the question of our jurisdiction over this combined appeal and original proceeding. An interlocutory appeal is an appropriate vehicle to review an order denying arbitration under the TAA. *See* Tex. Civ. Prac. & Rem.

Code Ann. §§ 171.021, 171.098(a)(1) (Vernon 2005). Mandamus is appropriate to review an order denying arbitration when the FAA applies. *See In re Valero*, 968 S.W.2d at 916 (citing *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992) (orig.proceeding)); *In re MONY Secs. Corp. v. Durham*, 83 S.W.3d 279, 282 (Tex. App.-Corpus Christi 2002, combined appeal & orig. proceeding). The arbitration agreement in the present case does not specifically invoke either the FAA or the TAA, and the trial court made no finding as to which act applies.

The FAA will govern an arbitration agreement contained in a contract evidencing a transaction involving commerce. *See In re MONY*, 83 S.W.3d at 282. A contract "evidences a transaction involving commerce" if it involves interstate commerce. *Id.* (citing *Allied–Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 277–81, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)). Here, the Subcontractors argue that the transaction involved interstate commerce because several subcontractors were out-of-state parties and because materials had to be shipped to Texas from other states. The County, in its appellate brief, does not respond to this argument directly but instead notes that if this Court determines that the transaction did not involve interstate commerce and must be reviewed under the TAA, we will not have jurisdiction to review the order of severance.

We conclude that interstate commerce was clearly involved in the construction of the county jail complex, and therefore the arbitration provisions at issue in both contracts are subject to the FAA. *See In re MONY*, 83 S.W.3d at 282–83; *see also*

2. One of the Subcontractors, Cappadonna, informed this Court by letter dated August 22, 2005, that Landmark and Cameron County settled their claims during arbitration. However, as Cappadonna noted in its letter, this did not moot the interlocutory appeal or original proceeding filed by the Subcontractors. The Subcontractors could still seek to compel Cameron County to enter arbitration proceedings without Landmark's presence.

*Serv. Corp. Int'l v. Lopez,* 162 S.W.3d 801, 807–08 (Tex.App.-Corpus Christi 2005, no pet.) (listing types of interstate activity from prior cases that have served to establish interstate commerce and thus invoke the FAA). Thus, mandamus is the appropriate vehicle for relief. *See In re MONY,* 83 S.W.3d at 282–83. Accordingly, we dismiss the interlocutory appeal in Cause No. 13–04–578–CV for want of jurisdiction. *See id.* at 283. We will address only the petition for writ of mandamus.

## Mandamus

The Subcontractors allege in their petitions for writ of mandamus that the trial court erred and abused its discretion when it entered the order denying Subcontractors' motion to compel arbitration because of the application of the doctrines of (1) incorporation by reference and (2) equitable estoppel. Additionally, the Subcontractors argue the following: the trial court erred by entering the order to sever the Subcontractors' suit from Landmark's suit; the Subcontractors have not waived their right to arbitrate; the arbitration agreement is not unconscionable; and respondent Judge Limas's findings regarding security problems at the jail lack evidentiary support and are immaterial to the question of whether the Subcontractors are entitled to arbitration. For all of these reasons, the Subcontractors argue they are entitled to a writ of mandamus reversing the trial court's decision and allowing them to arbitrate their claims.

 Mandamus will issue only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Redondo,* 47 S.W.3d 655, 658 (Tex.App.-Corpus Christi 2001, orig. proceeding). "A trial court abuses its discretion when it does not follow guiding rules and principles and reaches an arbitrary and unreasonable decision." *Id.* Mandamus relief is available to a party who is improperly denied arbitration under an agreement subject to the FAA. *See EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 88 (Tex.1996).

 A party seeking to compel arbitration must (1) establish the existence of an arbitration agreement and (2) show that the claims asserted fall within the scope of that agreement. *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex. 1999) (orig.proceeding); *In re C & H News Co.,* 133 S.W.3d 642, 645 (Tex.App.-Corpus Christi 2003, orig. proceeding). Although courts generally enforce arbitration agreements, a court may not order arbitration in the absence of such an agreement. *See Freis v. Canales,* 877 S.W.2d 283, 284 (Tex. 1994). The parties' agreement to arbitrate must be clear. *See Mohamed v. Auto Nation USA Corp.,* 89 S.W.3d 830, 835 (Tex.App.-Houston [1st Dist.] 2002, no pet., combined appeal & orig. proceeding). If one party denies that there is a binding arbitration agreement, the trial court may summarily decide whether to compel arbitration on the basis of uncontroverted affidavits, pleadings, discovery, and stipulations. *See Jack B. Anglin Co.,* 842 S.W.2d at 269. Whether there is an enforceable agreement to arbitrate is a question of law and is therefore reviewed de novo. *See Tenet Healthcare Ltd. v. Cooper,* 960 S.W.2d 386, 388 (Tex.App.-Houston [14th Dist.] 1998, pet. dism'd w.o.j.).

 The Texas Supreme Court noted that there are six recognized theories that may be used to bind non-signatories to arbitration agreements: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. *See In re Kellogg, Brown & Root,* 166 S.W.3d 732, 739 (Tex. 2005). These six theories arise out of federal law principles of contract and agency law but are to be applied by state courts reviewing arbitration disputes under the

FAA. *See id.* The Subcontractors here allege that they are entitled to arbitration under the theories of incorporation by reference and equitable estoppel.

### Incorporation by Reference

 Under the doctrine of incorporation by reference, where one contract refers to another contract or instrument, the second document may properly constitute part of the original contract. *See City of Port Isabel v. Shiba,* 976 S.W.2d 856, 858 (Tex.App.-Corpus Christi 1998, pet. denied). Disputes relating to this doctrine often raise questions of contract interpretation. *See, e.g., In re C & H News Co.,* 133 S.W.3d 642, 645 (Tex.App.-Corpus Christi 2003, orig. proceeding). In construing the Subcontractors' rights and duties under their subcontracts, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the subcontract. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998). To ascertain the true intentions of the parties to the subcontract, we examine the entire agreement in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 652 (Tex.1999). When a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous, and courts construe it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex. 2003).

In the trial court's order granting Landmark's motion to compel arbitration and denying the Subcontractors' motions to compel, the court found that there was a two-part "Prime Contract" between Cameron County and Landmark consisting of a standard form agreement and a standard list of contractual conditions. The conditions include the following provision regarding arbitration:

> Any claims, disputes, or controversies between the parties arising out of or relating to the Agreement, or the breach thereof, which have not been resolved ... shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the AAA then in effect, unless the parties mutually agree otherwise.

Based on this agreement, the trial court found that there was an enforceable agreement to arbitrate between Landmark and Cameron County, and it accordingly ordered arbitration.

However, the trial court also found that the Subcontractors "are not parties to the Prime Contract between the County and Landmark, and the Subcontractors are thus not parties to the arbitration clause in the Prime Contract." The trial court based its findings on the following express provision in the Prime Contract:

> Nothing in the Contract Documents is intended or deemed to create any legal or contractual relationship between Owner [the County] and any Design Consultant.... Nothing in the Contract Documents is intended or deemed to create any legal or contractual relationship between Owner [the County] and any Subcontractor or Sub–Subcontractor including but not limited to any third-party beneficiary rights.

The trial court also found that the standard form subcontracts enacted between Landmark and the Subcontractors did not attempt to incorporate the terms of the Prime Contract into the subcontracts.

The Subcontractors characterize this finding as "inexplicable," noting that the standard form subcontracts signed by

themselves and Landmark contain the following provision:

> Insofar as the provisions of the General Contract do not conflict with specific provisions herein contained, they and each of them are hereby incorporated into this subcontract as fully as if completely re-written herein, except that all of said non-conflicting provisions are amended as follows: wherever the "Owner" is referred to therein, the word "Contractor" shall be substituted therefor, and wherever the "Contractor" is referred to therein the word "Subcontractor" shall be substituted therefor. The Subcontractor agrees not to violate any term, covenant, or condition of the General Contract.

The Subcontractors refer to this provision as the "incorporation provision" and argue that it serves to contractually bind them to the arbitration agreement signed by Cameron County and Landmark.[3]

We disagree. The incorporation provision of the standard form subcontract clearly borrows some of the terms of the general contract between Cameron County and Landmark but is nonetheless a different and separate contract between the Subcontractors and Landmark. The in-corporation provision does not, however, create a relationship between the Subcontractors and the County, nor does it impose any duties or obligations on the Subcontractors with respect to the County. All references to Cameron County are in fact explicitly removed from the language of the subcontract by operation of the incorporation provision. Furthermore, we find it significant that the incorporation provision *first* dictates the removal of all mention of the County so that only Landmark and the Subcontractors are named parties in the contract, and *then* adds that the Subcontractor agrees not to violate any term of that amended, Cameron County-less contract. Thus, not only does the Prime Contract signed by Cameron County specifically disclaim any contractual relationship with a subcontractor, the subcontract signed by the Subcontractors contains no reference to the County or to the County's relationship with Landmark.

This conclusion is in line with the cases cited by the Subcontractors for support of their incorporation-by-reference argument, i.e., *In re C & H News Co.*, 133 S.W.3d at 645, and *Teal Constr. Co. v. Darren Casey Interests, Inc.*, 46 S.W.3d 417, 420 (Tex. App.-Austin 2001, pet. denied). The *In re*

---

**3.** The general contract also provides the following:

> [Landmark] and [Cameron County] expressly agree that any arbitration pursuant to this Section 10.3 may be joined or consolidated with any arbitration involving any other person or entity (i) necessary to resolve the claim, dispute or controversy, or (ii) substantially involved in or affected by such claim, dispute or controversy. Both [Landmark] and [Cameron County] will include appropriate provisions in all contracts they execute with other parties in connection with the Project to require such joinder or consolidation.

The Subcontractors argue that this is a clear indication that Cameron County expressly intended to incorporate other arbitration agreements between Landmark and any subcontractors. We disagree. Under this provision, the Subcontractors could initiate arbitration proceedings against Landmark and Landmark could then potentially join that arbitration with its separate arbitration proceedings against Cameron County. However, this only makes the Subcontractors and Cameron County able to assert any claims they both have against Landmark in a single proceeding; it does not itself provide a means for the Subcontractors to arbitrate their claims against Cameron County directly. The provision is a joinder or consolidation provision only and does not indicate that any interested third-party can attempt to harness the arbitration clause in the Cameron County–Landmark contract in order to pursue its own claims in arbitration.

*C & H News Co.* opinion from this Court recognized incorporation by reference in the context of arbitration clauses, but only to the extent that a signatory to the agreement could be bound by an arbitration clause in the incorporated document. *See In re C & H News Co.*, 133 S.W.3d at 645–47. The *Teal Constr. Co.* case also held that a document incorporated by reference in a contract could bind a party who has signed that contract. *See Teal Constr. Co.*, 46 S.W.3d at 420. Applying the reasoning from those previous cases here, only the Subcontractors and Landmark, as signatories to the subcontract, would be bound by the arbitration clause incorporated into their subcontracts. In no case cited by the Subcontractors was a non-signatory third-party compelled through the incorporation-by-reference doctrine to enforce a provision of a document it did not sign or incorporate.

 The incorporation by reference doctrine applies when a party incorporates a document by reference into its own contract and thereby binds *itself* to provisions within the incorporated document. *See City of Port Isabel*, 976 S.W.2d at 858. The Subcontractors' unilateral act cannot bind Cameron County, and Cameron County did not incorporate the Landmark–Subcontractors agreement. This issue is overruled.

### Equitable Estoppel

 The Subcontractors also argue that the principle of equitable estoppel precludes the County from denying them the right to arbitrate the County's claims. Where a signatory to a contract containing an arbitration agreement has sued a non-signatory, equitable estoppel allows the non-signatory to compel the signatory to arbitrate in two circumstances: (1) when the signatory has raised allegations of substantially interdependent and concert-ed misconduct by both the non-signatory and one or more of the signatories to the contract; or (2) when the nature of the signatory's claims against the non-signatory requires reliance on the agreement containing an arbitration provision. *See Merrill Lynch Trust Co. FSB v. Alaniz*, 159 S.W.3d 162, 170 (Tex.App.-Corpus Christi 2004, orig. proceeding); *In re Hartigan*, 107 S.W.3d 684, 691 (Tex.App.-San Antonio 2003, orig. proceeding). In other words, the non-signatory is bound to arbitrate if its claim seeks to enforce the terms of the written agreement containing the arbitration provision. *See Lopez*, 162 S.W.3d at 812. The non-signatory cannot enforce specific terms of the agreement while seeking to avoid the arbitration provision. *Id.* The application of this doctrine falls within the trial court's discretion. *Merrill Lynch Trust Co.*, 159 S.W.3d at 170.

The Texas Supreme Court has limited the application of this doctrine in its *In re Kellogg, Brown & Root* opinion:

> [A]lthough a non-signatory's claim may relate to a contract containing an arbitration provision, that relationship does not, in itself, bind the non-signatory to the arbitration provision. Instead, a non-signatory should be compelled to arbitrate a claim only if it seeks, through the claim, to derive a *direct benefit* from the contract containing the arbitration provision.

*In re Kellogg, Brown & Root*, 166 S.W.3d at 741 (emphasis added). The *In re Kellogg, Brown & Root* opinion, in reaching this conclusion, relied on several federal cases which further defined direct versus indirect benefits: "[T]he benefit derived from an agreement is indirect where the non-signatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself." *MAG Portfolio Con-*

*sult, GMBH v. Merlin Biomed Group LLC,* 268 F.3d 58, 61 (2nd Cir.2001); *see Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 417–18 (4th Cir.2000). More recently, the supreme court again applied the equitable principal of estoppel to compel a non-signatory to arbitrate claims it raised under a contract that contained an arbitration provision, concluding that "when a nonparty consistently and knowingly insists that others treat it as a party, it cannot later turn its back on the portions of the contract, such as an arbitration clause, that it finds distasteful.' A nonparty cannot both have his contract and defeat it too." *In re Weekley Homes,* 180 S.W.3d 127, 135, 2005 WL 3676775 at *4, No. 04–0119, 2005 Tex. LEXIS 817, at *21, (Oct. 28, 2004, orig.proceeding) (citations omitted).

In its claims against the Subcontractors, Cameron County seeks damages for breach of fiduciary duty by alleging the following:

> The agreement between the County and Landmark required results in strict compliance with the agreement between them. Landmark's performance pursuant to their agreement with the County did not strictly conform to those requirements and is therefore defective. Applicable construction regulations and/or practices were not followed by Landmark and some or all of [the Subcontractors]. Landmark and the [Subcontractors] are subsequently liable under their agreement with the County. Landmark and the [Subcontractors] failed to strictly comply with the agree-

ment and are liable for damages proximately caused by such breach....

In making this allegation against the Subcontractors, the County has implied that the Subcontractors and the County were in a contractual relationship with each other via the intermediate contracts they both made with Landmark: Landmark and the Subcontractors both are "liable under their agreement with the County" and "failed to strictly comply with the agreement." The petition only refers to a single "agreement," implying that the series of separate agreements between Cameron County and Landmark, and Landmark and the Subcontractors, can be combined into a single agreement for the purposes of this suit in which Cameron County is attempting to enforce the terms of the Landmark–Subcontractor agreement. The County has thus attempted to "exploit (and thereby assume) the [Subcontractor–Landmark] agreement itself," and has not simply attempted to "[exploit] the contractual relation of [the] parties." *MAG Portfolio Consult,* 268 F.3d at 61; *see In re Kellogg, Brown & Root,* 166 S.W.3d at 741. This establishes direct benefits estoppel even under the strict test espoused in *In re Kellogg, Brown & Root.*

The County, as the non-signatory to the Landmark–Subcontractor contract, cannot attempt to enforce specific terms of the subcontract and thereby obtain a direct benefit from the contract while simultaneously seeking to avoid the arbitration provision. *See Lopez,* 162 S.W.3d at 812. The County is equitably estopped from preventing arbitration from occurring.[4]

---

4. In its *In re Weekley Homes* opinion, the supreme court reached the same conclusion under similar circumstances:

> Like the equitable doctrine of promissory estoppel, we do not understand direct-benefits estoppel to create liability for noncontracting parties that does not otherwise exist. As Von Bargen and Weekley had no

contract between them, estoppel alone cannot grant either a right to sue for breach. Nor do we understand the doctrine to apply when the benefits alleged are insubstantial or indirect. But once Von Bargen deliberately sought substantial and direct benefits from the contract, and Weekley agreed to comply, equity prevents her from avoiding

Accordingly, we conclude that the trial court erred by denying the Subcontractors' motion to compel, and further, that this error constituted an abuse of discretion. *See Garza,* 848 S.W.2d at 806 ("A trial court abuses its discretion by failing to correctly apply the [FAA] to the facts of a case."). We sustain this issue.

### Remaining Issues

■ The Subcontractors also raised the following issues in their petitions for writ of mandamus: (1) the trial court erred by entering the order to sever the Subcontractors' suit from Landmark's suit; (2) the Subcontractors have not waived their right to arbitrate; (3) the arbitration agreement is not unconscionable; and (4) respondent Judge Limas's findings regarding security problems at the jail lack evidentiary support and are immaterial to the question of whether the Subcontractors are entitled to arbitration.

■ Responding to the first issue regarding the order of severance, we note that following the severance of the Subcontractors' suit, Landmark and the County successfully arbitrated their claims to settlement. When there has ceased to be an active controversy, "the decision of an appellate court would be a mere academic exercise." *Hanna v. Godwin,* 876 S.W.2d 454, 457 (Tex.App.-El Paso 1994, no writ). When events occur after a judgment which render the issue before this Court moot, we may not decide the appeal. *Id.* (citing *Gen. Land Office v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 570–71 (Tex.1990)). Thus, the issue of severance of the Subcontractors' claims is rendered moot as it would no longer be possible for this Court to remedy error, if any, in the order. *See* Tex.

R.App. P. 43.2 (listing potential types of judgment this Court may render).

■ With regard to the remaining issues, we note that they respond to an earlier order signed by respondent. The final corrected order, signed by respondent on October 29, 2005, makes no reference to any issues of waiver by the Subcontractors or unconscionability. Accordingly, we decline to further address these issues as moot. *See Hanna,* 876 S.W.2d at 457.

■ Furthermore, we note that respondent made no specific findings regarding the claims raised by the County alleging faulty construction; the only "factual finding" regarding security problems in the order was the following statement: "It is undisputed that there have been various escape attempts from the Detention Center, including one escape attempt in early 2004, involving inmates who penetrated the hollow cinder-block walls of the Detention Center." All other references to security problems were clearly denoted to be allegations of the County, not factual findings.

■ After a judgment of the trial court becomes final, it can be altered through the entry of a nunc pro tunc judgment if the evidence shows that a clerical error, rather than a judicial error, caused the inaccuracy. Tex.R. Civ. P. 316; *Gutierrez v. Elizondo,* 139 S.W.3d 768, 771 (Tex. App.-Corpus Christi 2004, no pet.). A judicial error is an error which occurs in the rendering, as opposed to the entering, of a judgment. *Gutierrez,* 139 S.W.3d at 771. A clerical error is one which, after being corrected, does not change the terms of the judgment as rendered. *See id.*

the arbitration clause that was part of that agreement.
*In re Weekley Homes,* 180 S.W.3d 127, 133, 2005 WL 3676775 at *4, No. 04–0119, 2005

Tex. LEXIS 817, at *19, 49 Tex. Sup. J. 55 (Oct. 28, 2004, orig.proceeding).

If, as the Subcontractors appear to allege here, the complained-of statement regarding prisoner escape attempts was not in fact an "undisputed" statement of fact, we see that this is nonetheless no more than a clerical error as its removal or correction would not change or affect the terms of the judgment as rendered. Therefore, as the proper remedy for the Subcontractors is to seek a judgment nunc pro tunc from the trial court, *see id.*, or to establish in the record that this statement was clearly erroneous, we will not address this complaint. *See Asberry v. State*, 813 S.W.2d 526, 529 (Tex.App.-Dallas 1991, pet. ref'd) (noting appellate courts have power to correct clerical errors when evidence clearly showing error appears in the record).

## Conclusion

We dismiss the interlocutory appeal in Cause No. 13–04–578–CV for lack of jurisdiction.

We conditionally grant the relief sought by the Subcontractors in Cause No. 13–05–165–CV. Respondent is ordered to vacate his order of October 29, 2004, insofar as it denies the Subcontractors' motion to compel arbitration. A writ of mandamus will issue if respondent refuses to comply with this Court's instructions.

The stay of the underlying proceedings issued by this Court is hereby set aside so that the parties may comply with this opinion.