

NUMBER 13-09-00051-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

APPLING FARMS AND APPLING
INTERESTS, LTD.,                                        **Appellants,**

**v.**

TURNER MANAGEMENT, INC.,                               **Appellee.**

On appeal from the 23rd District Court
of Wharton County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Perkes
Memorandum Opinion by Justice Rodriguez**

Appellants Appling Farms and Appling Interests, Ltd. (collectively, Appling) challenge the trial court's refusal to order arbitration on Appling's dispute with appellee Turner Management, Inc. over their limited partnership. By one issue, Appling argues that the trial court had no discretion to deny arbitration where the partnership agreement

at issue provided for arbitration on the issue of removal of the general partner. We affirm.

## I. BACKGROUND[1]

As set out by their Agreement of Limited Partnership (the partnership agreement), Appling Farms, Appling Interests, and John Turner, president of Turner Management, are limited partners in Lonestar Aquafarms, Ltd., a redfish farming venture in Palacios, Texas. The Appling entities own sixty-six and two-thirds percent of Lonestar; Turner owns thirty-three and one-third percent. Turner Management is the general partner under the partnership agreement and owns one percent of Lonestar. The parties agree that Turner is Turner Management's primary employee and that he runs the fish farm.

In late 2006, a dispute arose over Turner's management of Lonestar. In April 2007, Appling filed suit against Turner and Turner Management. In its suit, Appling alleged, in relevant part, that Turner and his wife misappropriated trade secrets, customer lists, and other such property belonging to Lonestar and started a competing fish farm. By those actions, Appling claimed that Turner Management usurped partnership opportunities belonging to Lonestar, converted the property of Lonestar, and engaged in unfair competition against Lonestar. Appling prayed for money damages and injunctive relief against Turner and Turner Management. Extensive discovery and motion practice ensued over the next eighteen months.

In September 2008, approximately one month before trial on the merits of its lawsuit, Appling sent notice to Turner Management that they were seeking arbitration of

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

2

the issue of removing Turner Management as general partner, claiming that the following

provision in the partnership agreement required arbitration of that issue:

> **8.7    Removal of General Partner.**   Upon thirty (30) days' prior written notice, and with written consent of a majority of the Limited Partners, a General Partner may be removed for any act which constitutes fraud, gross negligence or willful misconduct that has a detrimental effect on the Partnership, as determined by an independent third-party mediator appointed by agreement of the Limited Partners, provided that the written consent of the Limited Partners designates a substitute General Partner.

Turner Management refused to consent to arbitration.   In October 2008, Appling filed its

motion to compel arbitration with the trial court.   Turner Management responded to the

motion to compel, arguing that the above clause did not constitute an agreement to

arbitrate and, alternatively, that Appling had waived its right to arbitration by substantially

invoking the judicial process to Turner Management's detriment.   The trial court held a

hearing on Appling's motion to compel on November 4, 2008.[2]   The trial court denied the

motion on January 20, 2009.   This accelerated appeal followed.[3]   *See* TEX. CIV. PRAC. &

REM. CODE ANN. § 171.098(a) (Vernon 2005) (allowing a party to appeal the denial of a

motion to compel arbitration under the Texas Arbitration Act (TAA)); *see also Chambers*

---

[2] The reporter's record for the hearing is not included in the record before this Court.   Our review of the appellate record reveals that neither of the parties requested that the court reporter prepare and file a copy of the reporter's record with this Court.   *See* TEX. R. APP. P. 34.6.

[3] Appling asserts that the clause at issue in this case is governed by the Texas Arbitration Act (TAA), and Turner Management does not dispute this assertion.   *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001-.098 (Vernon 2005).   Although the clause invokes neither the TAA nor the Federal Arbitration Act (FAA), Appling filed its motion to compel under section 171.021 of the TAA.   *See id.* § 171.021.   We conclude that Appling therefore properly sought review of the trial court's denial of its motion to compel by interlocutory appeal and that we have jurisdiction to review it.   *See id.* § 171.098(a)(1); *see also ODL Servs., Inc. v. ConocoPhillips Co.*, 264 S.W.3d 399, 411 (Tex. App.–Houston [1st Dist.] 2008, no pet.) (holding that an " [i]nterlocutory appeal [will lie]" over a trial court's denial of a motion to compel when the motion is asserted under the TAA); *Smith Barney Shearson, Inc. v. Finstad*, 888 S.W.2d 111, 113-14 (Tex. App.–Houston [1st Dist.] 1994, no writ) (concluding that the court of appeals had jurisdiction over an order denying arbitration where the parties chose to pursue only an interlocutory appeal and neither seriously contended that the TAA was inapplicable to the case).

3

*v. O'Quinn*, 242 S.W.3d 30, 31 (Tex. 2007) (holding that the TAA allows interlocutory appeals from orders denying arbitration).

## II.  DISCUSSION

By one issue, Appling argues that the trial court erred in denying its motion to compel arbitration because the clause in the partnership agreement providing for the removal of the general partner included an agreement to submit that issue to arbitration.

### A.  Standard of Review and Applicable Law

A party cannot be required to arbitrate unless it has agreed to do so.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(a) (Vernon 2005) (requiring a judge to order arbitration upon finding agreement to arbitrate); *Cappadonna Elec. Mgmt. v. Cameron County*, 180 S.W.3d 364, 371 (Tex. App.–Corpus Christi 2005, no pet.) (citing *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994)); *see also Perry Homes v. Cull*, 258 S.W.3d 580, 593 (Tex. 2008) ("The answers to most questions regarding arbitration flow inexorably from the fact that arbitration is simply a matter of contract between the parties.").  Thus, a party seeking to compel arbitration must (1) establish the existence of an arbitration agreement and (2) show that the claims asserted fall within the scope of that agreement.  *Cappadonna Elec. Mgmt.*, 180 S.W.3d at 371.  The presumption favoring arbitration arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists.  *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).  And for a valid agreement to exist, "[t]he parties' agreement to arbitrate must be clear.  In this determination, Texas contract law applies." *Bates v. MTH Homes-Tex., L.P.*, 177 S.W.3d 419, 422 (Tex. App.–Houston [1st Dist.] 2005, orig. proceeding) (quotations omitted).  Once a party establishes the existence of an arbitration agreement

4

and that the claim falls within the scope of the arbitration agreement, though, the trial court must compel arbitration and stay its own proceedings, unless the party opposing arbitration proves a defense precluding enforcement. *See In re C & H News Co.*, 133 S.W.3d 642, 645 (Tex. App.–Corpus Christi 2003, orig. proceeding).

Here, we agree with the parties that, although they disagree on the interpretation, the clause at issue is not ambiguous because it can be given a definite and certain legal meaning. *See Dynegy Midstream Servs., L.P. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009) ("A contract is not ambiguous simply because the parties disagree over its meaning."); *J.M. Davidson, Inc.*, 128 S.W.3d at 229. "Construction of an unambiguous contract is a question of law." *MCI Telecomms. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). Therefore, whether an enforceable agreement to arbitrate exists here is a legal question subject to de novo review. *Cappadonna Elec. Mgmt.*, 180 S.W.3d at 371; *see In re C & H News Co.*, 133 S.W.3d at 645.

In interpreting the clause at issue, "this Court may not expand upon the terms of the contract or tolerate a liberal interpretation of it by reading into it a voluntary, consensual agreement to arbitrate when one otherwise does not exist." *Bates*, 177 S.W.3d at 422 (citing *In re ACG Cotton Mktg., L.L.C.*, 985 S.W.2d 632, 633 (Tex. App.–Amarillo 1999, orig. proceeding); *Escajeda v. Cigna Ins. Co.*, 934 S.W.2d 402, 407 (Tex. App.–Amarillo 1996, no writ) ("[B]efore a contract can be read as delegating to third-parties that power [as sole arbiters of reasonableness and necessity of all future medical expenses], the words evincing the delegation must be express, plain, clear, and certain."); *Seale v. Roy M. Mitchell Contracting Co.*, 321 S.W.2d 149, 151 (Tex. Civ. App.–Austin 1959, writ ref'd) (finding "no clear incorporation of the arbitration provisions

of the principal contract into the subcontract between" the parties)).  Rather, we will ascertain and give effect to the parties' intentions as expressed in the document.  *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005); *J.M. Davidson, Inc.*, 128 S.W.3d at 229; *In re C & H News Co.*, 133 S.W.3d at 645.  Contract terms will be given their plain, ordinary, and generally accepted meaning, unless the instrument shows the parties used them in a technical or different sense.  *Dynegy Midstream Servs., L.P.*, 294 S.W.3d at 168; *Heritage Res., Inc. v. Nations Bank*, 939 S.W.2d 118, 121 (Tex. 1996).

### B.  Analysis

Appling and Turner Management dispute whether the clause at issue creates an agreement to arbitrate, but they do not dispute the scope of the clause, which governs the removal of the general partner.   Thus, the only issue before us is whether an agreement to arbitrate exists.   Citing *Porter & Clements, L.L.P. v. Stone*, Appling argues that, even though the clause at issue does not use the term arbitration, the language of the clause evidences an intent by the parties to submit the issue of general partner removal to a third party for binding resolution.   *See* 935 S.W.2d 217, 222 (Tex. App.–Houston [1st Dist.] 1996, no writ) (citing *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 830-31 (2nd Cir.1988)).   We disagree.

Arbitration is defined as

> [A] contractual proceeding by which the parties to a controversy or dispute, in order to obtain a speedy and inexpensive final disposition of matters involved[,] voluntarily select arbitrators or judges of their own choice, and by consent[,] submit the controversy to such tribunal for determination in substitution for the tribunals provided by the ordinary processes of the law.

6

*Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992) (quotations omitted); *see* BLACK'S LAW DICTIONARY 119 (9th ed. 2009) (defining arbitration as a "method of dispute resolution involving one or more neutral third parties who are usually agreed to by the disputing parties and whose decision is binding"). Mediation, the only type of third-party dispute resolution directly referenced in the clause here, is defined as a "method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution." BLACK'S LAW DICTIONARY 1070-71. Looking to the plain language of the contract to ascertain the parties' intentions, *see Dynegy Midstream Servs., L.P.*, 294 S.W.3d at 168; *Frost Nat'l Bank*, 165 S.W.3d at 311-12, we cannot conclude that the clause's requirement of a mediator manifests a plain, clear, and certain intention to submit the partner removal issue to a third-party for binding and final resolution. *See Bates*, 177 S.W.3d at 422. Neither does the clause manifest an intent to submit the issue to a third-party in substitution for the courts. *See Jack B. Anglin Co., Inc*, 842 S.W.2d at 268. Rather, arbitration and mediation are fundamentally different methods of dispute resolution, and we believe the parties' use of the word "mediator" and the absence of any terms indicating that third-party resolution is mandatory and/or binding is key. *See* BLACK'S LAW DICTIONARY 119, 1070-71 (differentiating between the binding versus non-binding natures of arbitration and mediation, respectively); *see also High Valley Homes, Inc. v. Fudge*, No. 03-01-00726-CV, 2003 WL 1882261, at *3 (Tex. App.–Austin Apr. 17, 2003, no pet.) (mem. op.) (holding that an agreement for "mediation" was actually an agreement for arbitration but only where the terms provided that "controversies arising out of this Project and this Agreement shall be resolved through *mandatory, binding* mediation" and the

7

"mediator shall be empowered to decide the controversy and issue a *binding* award") (emphasis added)). To interpret the clause otherwise would be reading an agreement to arbitrate into the partnership agreement when the language used by the parties indicates another intention—i.e., that they desired to submit the partner removal issue to a mediator. *See Bates*, 177 S.W.3d at 422. Appling therefore failed to prove that an agreement to arbitrate exists, and the trial court did not err in denying Appling's motion to compel. *See Cappadonna Elec. Mgmt.*, 180 S.W.3d at 371; *In re C & H News Co.*, 133 S.W.3d at 645. Appling's sole issue is overruled.

### III. CONCLUSION

We affirm the trial court's denial of Appling's motion to compel arbitration.


NELDA V. RODRIGUEZ
Justice

Delivered and filed the 27th
day of January, 2011.

8