

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00357-CV

GRANITE RE INC.                                                    APPELLANT

V.

JAY MILLS CONTRACTING INC.                                        APPELLEE

----------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
### TRIAL COURT NO. C2014036

----------

## MEMORANDUM OPINION[1] ON REHEARING

----------

On April 10, 2015, appellant Granite Re Inc. (Granite) filed a motion for rehearing directed to our March 26, 2015 memorandum opinion and judgment. We deny the motion for rehearing but withdraw our prior opinion and judgment and substitute the following. *See* Tex. R. App. P. 49.3.

----

[1]*See* Tex. R. App. P. 47.4.

Granite appeals from the trial court's order denying its motion to compel arbitration. We reverse the trial court's order and remand for entry of an order compelling arbitration.

## I. BACKGROUND

### A. UNDERLYING AGREEMENTS

The City of Granbury (the city) hired appellee Jay Mills Contracting, Inc. (JMC) to design and build a recreational boardwalk, boat dock, and fishing dock (the project). JMC then subcontracted with North American Marine Industries (NAMI) to perform the required work. JMC and NAMI entered into a "Blanket Agreement . . . between the Contractor and the Design/Build Subcontractor" (the blanket agreement). NAMI signed the blanket agreement on June 19, 2012, and JMC signed it on June 28, 2012. The blanket agreement included an arbitration clause, which provided that "all claims, disputes and controversies arising out of or relating to this Blanket Agreement and any Work Orders issued hereunder, including claims for extra work or changed conditions to or related to the Subcontract Work, shall be decided by arbitration." The arbitration clause further stated that the "claimant" in any such arbitration proceeding could be either "the Contractor"—JMC—or the "Design/Build Subcontractor"—NAMI. Similarly, the blanket agreement provided that "[n]othing contained in this Blanket Agreement shall create a contractual relationship with, or create a cause of action in favor of, a third party which is neither the Contractor [JMC] nor Design/Build Subcontractor [NAMI]. [JMC] and [NAMI] agree that there are no third party

2

beneficiaries to the Blanket Agreement." The blanket agreement further provided that NAMI would furnish a performance bond "in a form satisfactory to [JMC]," if JMC required such a bond. It is uncontradicted that JMC required NAMI to furnish a performance bond.

On the same dates that JMC and NAMI signed the blanket agreement, they also signed a "Work Order to Blanket Agreement" (the work order), incorporating the terms of the blanket agreement. The work order required NAMI to "provide bonding for the project for an additional $8,730.00." On June 21, 2012—before JMC signed the blanket agreement and work order but after NAMI did so—NAMI executed a performance bond, with Granite acting as the surety, in the amount of $291,719.[2] The performance bond stated that the work order between JMC and NAMI was "incorporated by reference and made a part of this [performance bond] for all purposes."

## B. Underlying Dispute[3]

JMC alleged that by October 2012, NAMI had abandoned the project, defaulted on the blanket agreement and work order, and "clos[ed] shop." On

---

[2]The performance bond was not a statutory performance bond because it was not executed by JMC as the city's contractor. *See* Tex. Gov't Code Ann. § 2253.021 (West Supp. 2014).

[3]Our factual statements regarding the parties' underlying dispute merely provide context for our discussion of the enforceability of the arbitration clause at issue and, of course, are not a comment on the merits of JMC's claims, the merits of Granite's defenses to those claims, or the legal import of the contracts between JMC and NAMI. Indeed, these issues are not before us in this appeal.

3

March 10, 2014, JMC sued NAMI and Granite, as NAMI's surety, for breach of contract—the blanket agreement, the work order, and the performance bond—and sought damages arising from JMC's efforts to complete the project and from JMC's settlement of the city's claims against it. JMC's breach-of-contract claim against Granite solely encompassed Granite's alleged breach of the performance bond, not any breach of the blanket agreement or the work order. At some point in 2014, NAMI filed for bankruptcy protection. After the bankruptcy court granted NAMI a discharge, JMC filed a notice of nonsuit as to its claims against NAMI, and the trial court entered a dismissal order as to those claims. *See* Tex. R. Civ. P. 162; *Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011).

Granite then filed a motion to compel arbitration under the arbitration clause contained in the blanket agreement, arguing that the clause in the blanket agreement was incorporated into the performance bond through the work order. Thus, Granite argued that the performance bond incorporated the valid arbitration clause and that JMC's claims fell within the scope of the clause. Granite's argument was analogous to the children's song "There Was an Old Lady Who Swallowed a Fly": Because the work order swallowed the performance bond and the blanket agreement swallowed the work order, the blanket agreement necessarily swallowed the performance bond contained in the work order.[4]

---

[4]This is shown by Granite's argument that "[JMC] does have an enforceable arbitration agreement with [Granite] by virtue of the Bond, which

4

Granite also asserted that even if the arbitration clause in the blanket agreement could not be found to have been incorporated into the performance bond such that it applied to JMC's claims against Granite, JMC's claims were subject to the arbitration clause based on direct-benefits estoppel and JMC's status as a third-party beneficiary of the performance bond. In other words, Granite argued that if the performance bond that Granite signed was not incorporated into the blanket agreement such that the performance bond did not contain an arbitration clause, Granite could enforce the clause against JMC under equitable-estoppel theories.[5] JMC responded that the performance bond did not contain an arbitration clause and that even if the performance bond were deemed to include an arbitration clause, its indemnity claim against Granite did not fall within the clause's scope.

After holding a nonevidentiary hearing, the trial court denied Granite's motion to compel without entering findings of fact or conclusions of law. Granite filed an accelerated appeal and argues that the trial court erred by denying its motion because a valid arbitration clause existed that governed JMC's claims.

incorporates the Work Order, which incorporates the Blanket Agreement, which contains an arbitration agreement."

[5]At the hearing on Granite's motion, Granite stated that its "argument is you can't have the breach of contract claim under the performance bond, which incorporates the work order, which incorporates the blanket agreement, without taking out all subject to the arbitration. . . . The entire concept of incorporation by reference, the doctrine of equitable estoppel . . . all come into play when [JMC] can't sue Granite based on the supposed default under a binding contract and escape the arbitration clause."

5

*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (West 2015) (allowing interlocutory appeal from denial of motion to compel arbitration under the FAA).

In its motion to compel, Granite asserted the Federal Arbitration Act applied "because the parties have engaged in interstate commerce." *See* 9 U.S.C.A. § 2 (West 2009) (providing FAA governs contracts relating to interstate commerce). JMC did not object to the application of the FAA and the only argument raised in the trial court was that the FAA applied; thus, we apply the FAA. *See IKON Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 696 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding & no pet.) (holding burden is on party seeking to compel arbitration to show FAA applies).

## II. STANDARD OF REVIEW, BURDENS, AND PRESUMPTIONS

We review the trial court's denial of a motion to compel arbitration for an abuse of discretion but we review de novo a trial court's determination regarding whether a valid agreement to arbitrate exists. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *Branch Law Firm, L.L.P. v. Osorn*, 447 S.W.3d 390, 395 (Tex. App.—Houston [14th Dist.] 2014, no pet.). But because the trial court did not enter findings of fact or conclusions of law to explain its denial of the motion to compel, we must uphold the trial court's decision if there is sufficient evidence to support the denial on any legal theory raised in the trial court. *Shamrock Foods Co. v. Munn & Assocs., Ltd.*, 392 S.W.3d 839, 844 (Tex. App.—Texarkana 2013, no pet.); *In re Weeks*

6

*Marine, Inc.*, 242 S.W.3d 849, 854 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding).

Because Granite sought to compel arbitration, it bore the burden to establish that (1) there is a valid arbitration agreement and (2) the claims raised fall within that agreement's scope. *In re Kellogg, Brown & Root, Inc.*, 166 SW.3d 732, 737 (Tex. 2005) (orig. proceeding). The first inquiry is not subject to the FAA's general presumption in favor of arbitration and is determined by the application of state-law principles of contract. *See In re Poly–Am., L.P.*, 262 S.W.3d 337, 347–48 (Tex. 2008) (orig. proceeding); *Kellogg*, 166 S.W.3d at 737–38. Under such principles, we primarily must determine the parties' intent as expressed in the terms of the contract. *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex. 2009). If Granite met its burden to show a valid arbitration agreement, then any doubts concerning the scope of the arbitrable issues—the second inquiry—should be resolved de novo in light of the policy and presumption favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S. Ct. 927, 941 (1983); *accord Ellis v. Schlimmer*, 337 S.W.3d 860, 861–62 (Tex. 2011); *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898–99 (Tex. 1995) (orig. proceeding); *BBVA Compass Inv. Solutions, Inc. v. Brooks*, No. 02-13-00047-CV, 2015 WL 595209, at *4 (Tex. App.—Fort Worth Feb. 12, 2015, no pet. h.).

## III. ENFORCEABILITY OF ARBITRATION CLAUSE

### A. EXISTENCE OF VALID ARBITRATION AGREEMENT

Therefore, our first question is whether Granite showed, under Texas contract principles, that there was a valid agreement to arbitrate as between JMC and Granite. Granite posited three theories by which it could enforce the arbitration clause in the blanket agreement against JMC: (1) incorporation by reference, (2) direct-benefits estoppel, and (3) third-party beneficiary. *See generally Rachal v. Reitz*, 403 S.W.3d 840, 846 n.5 (Tex. 2013) (listing theories under which nonsignatories may be bound to or may enforce arbitration agreements). For the following reasons, we conclude that Granite carried its burden to show that there was a valid arbitration agreement as between JMC and Granite.

As stated above, the arbitration clause Granite seeks to enforce was contained in the blanket agreement, not the performance bond. Under the doctrine of incorporation by reference, however, where an agreement refers to a prior contract or instrument, the subsequent agreement may properly constitute part of the original contract. *Cappadonna Elec. Mgmt. v. Cameron Cnty.*, 180 S.W.3d 364, 371 (Tex. App.—Corpus Christi 2005, orig. proceeding & no pet.); *Teal Constr. Co./Hillside Villas Ltd. v. Darren Casey Interests, Inc.*, 46 S.W.3d 417, 420 (Tex. App.—Austin 2001, pet. denied). The language in the subsequent agreement must plainly refer to the original contract or otherwise show that the parties intended for the subsequent agreement to become part of

8

or incorporated into the original contract. *See One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 267 (5th Cir. 2011); *Owen v. Hendricks*, 433 S.W.2d 164, 167 (Tex. 1968); *In re C & H News Co.*, 133 S.W.3d 642, 645 (Tex. App.—Corpus Christi 2003, orig. proceeding); *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 391 F. Supp. 2d 541, 581 n.45 (S.D. Tex. 2005) (reciting Texas law regarding doctrine of incorporation by reference).

Even so, the language in the work order clearly indicated that the parties to the bond—NAMI and Granite—intended to incorporate the terms of the work order and, necessarily, the blanket agreement into the performance bond. Additionally, the blanket agreement specified that each work order included the blanket agreement; thus, the work order automatically included the terms of the blanket agreement, including the arbitration clause. Indeed, federal courts have held that a surety must arbitrate disputes related to a performance bond where the performance bond specifically incorporated by reference a contract containing an arbitration clause. *See U.S. Fid. & Guar. Co. v. W. Point Constr. Co.*, 837 F.2d 1507, 1508 (11th Cir. 1988); *Exch. Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274, 276 (6th Cir. 1984); *Developers Sur. & Indem. Co. v. Resurrection Baptist Church*, 759 F. Supp. 2d 665, 669–71 (D. Md. 2010); *see also* Greta A. McMorris & Lawrence Lerner, *To What Extent is a Surety Bound by Arbitration and Forum Selection Provisions in its Principal's Contract?*, 33 Constr. Lawyer 22, 26–27 (2013). Such is the case here.

Therefore, we conclude the performance bond contained a valid arbitration clause applicable to Granite and JMC through the doctrine of incorporation by reference.[6] Because we so conclude, we need not address Granite's arguments that the arbitration clause was enforceable through the equitable doctrines of direct-benefits estoppel or third-party beneficiary.

### B. CLAIMS FALL WITHIN SCOPE OF AGREEMENT

Although Granite met its burden to show that the arbitration clause was valid as between Granite and JMC through incorporation by reference, it must also establish that JMC's breach-of-contract claims against it fell within the scope of the arbitration clause and, if so, whether an exception removes JMC's claims from arbitration. *See Ellis*, 337 S.W.3d at 861–62. Because Granite established that a valid arbitration clause between it and JMC existed, we now indulge a strong presumption in favor of arbitration. *See id.* at 862; *J.M. Davidson*, 128 S.W.3d at 227. Necessarily, we must broadly interpret the scope of an arbitration clause in light of the federal policy favoring arbitration. *In re NEXT Fin. Grp., Inc.*, 271 S.W.3d 263, 267 (Tex. 2008) (orig. proceeding). But when exceptions to the arbitration clause are raised, we construe the exceptions narrowly in light of the federal policy favoring arbitration and disfavoring broad interpretations of exceptions. *Id.* This is a question of law that we review de

---

[6]Although the arbitration clause limits who may be a "claimant" in any arbitration proceeding to NAMI or JMC, JMC is the claimant because it brought claims against Granite.

10

novo and that allows consideration of the terms of the arbitration clause and the factual allegations pertinent to the claim. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding); *Associated Glass, Ltd. v. Eye Ten Oaks Invs., Ltd.*, 147 S.W.3d 507, 512 (Tex. App.—San Antonio 2004, orig. proceeding & no pet.).

The arbitration clause provided that "all claims, disputes and controversies arising out of or relating to this Blanket Agreement and any Work Orders issued hereunder . . . shall be decided by arbitration." The clause excepted from arbitration "a claim for contribution or indemnity asserted by [JMC] in a suit against a party with whom [JMC] does not have an enforceable arbitration agreement" (the exemption provision). In its petition against NAMI and Granite, JMC alleged that Granite breached the performance bond "by refusing and failing to remedy the defaults of [NAMI under the blanket agreement and work order] . . . and failing to pay [JMC] for the portion of [NAMI's] work [that JMC] completed employing such subcontractors and laborers, and furnishing such materials as [JMC] deemed necessary." In short, JMC argued that because NAMI breached the blanket agreement and the work order, Granite's obligations under the performance bond were triggered. JMC pleaded for specific damages in the amount of $109,698.13, representing the amount JMC alleged it paid the city to settle the city's claims against JMC based on NAMI's alleged default and JMC's attorneys' fees defending against the city's claims.

JMC's breach-of-contract claim against Granite clearly relates to NAMI's alleged failure to fully perform under the blanket agreement and work order, which triggered Granite's obligations under the performance bond. In other words, JMC could not pursue its breach-of-contract claim without reference to NAMI's performance (or lack of performance) under the blanket agreement and work order. JMC's breach-of-contract claim against Granite, therefore, fell within the scope of the clause. *See U.S. Sur. Co. v. Hanover R.S. Ltd. P'ship*, 543 F. Supp. 2d 492, 495–96 (W.D.N.C. 2008); *In re Rushing*, 443 B.R. 85, 95 (Bankr. E.D. Tex. 2010); *Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 854–55 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd); *cf. Gloucester City Bd. of Educ. v. Am. Arbitration Ass'n*, 755 A.2d 1256, 1262 (N.J. Super. Ct. App. Div. 2000) (holding contractor's claim against subcontractor's statutory surety not subject to arbitration clause contained in construction contract and incorporated into performance bond because contractor's claim did not involve performance of underlying construction contract but involved surety's personal defenses arising from the provisions of the bond itself). *See generally Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) ("Broad arbitration clauses [governing disputes relating to the contract] are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute.").

JMC argues that its claim seeking indemnity is exempted from arbitration under the exemption provision. But there is an enforceable arbitration agreement as between JMC and Granite under the doctrine of incorporation by reference and because JMC's claims fall with the broad scope of the arbitration clause. Therefore, the exception stated in the clause, interpreted narrowly in favor of arbitration, does not apply to JMC's claims against Granite. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 712 (4th Cir. 2001) (holding breach-of-contract claim was not collection action such that claim was encompassed by exemption for collection actions contained in arbitration clause); *cf. New York v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 62–64 (2d Cir. 1996) (holding claim clearly fell within exclusion to arbitration contained in clause; therefore, claim fell outside scope of arbitration clause and was not subject to arbitration). We conclude that JMC's claim against Granite fell within the scope of the broad arbitration clause in the blanket agreement and was not included in the exemption provision.

## IV. CONCLUSION

We conclude that a valid arbitration clause existed between JMC and Granite through the doctrine of incorporation by reference and that JMC's claims against Granite fell within the scope of the clause. Accordingly, the arbitration clause was enforceable by Granite in JMC's action against it. The trial court abused its discretion to conclude otherwise, and we sustain that portion of Granite's first issue raising incorporation by reference. We need not address the

13

remaining portion of Granite's first issue raising third-party beneficiary or Granite's second issue raising direct-benefits estoppel.  *See* Tex. R. App. P. 47.1.  Accordingly, we reverse the trial court's order denying Granite's motion to compel arbitration and remand to the trial court for entry of an order compelling the parties' dispute to arbitration under the terms of the arbitration clause.  *See* Tex. R. App. P. 43.2(d), 43.3(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  DAUPHINOT, GABRIEL, and SUDDERTH, JJ.

DELIVERED: April 23, 2015

14