

## NUMBER 13-11-00793-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

G.T. LEACH BUILDERS,
L. L.C., ET AL., Appellants,

v.

SAPPHIRE VP, LP, Appellee.

## On appeal from the 404th District Court
## of Cameron County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Benavides and Perkes
### Memorandum Opinion by Chief Justice Valdez

This is an interlocutory appeal challenging the trial court's denial of appellants' motions to compel arbitration. Appellee, Sapphire, V.P., L.P. sued appellants for breach of contract and negligence for damage to its condominium complex caused by Hurricane Dolly. The appellants include: (1) the architectural firm that designed the

condominium complex, ZCA Residential, LLC ("ZCA")[1]; (2) the general contractor, G.T. Leach Builders, LLC ("GTL"); (3) the subcontractors, CHP & Associates, Consulting Engineers, Inc. ("CHP"), Comfort Systems USA–South Central f/k/a Atlas Comfort Systems USA, LLC ("Atlas"), and Power Design, Inc. ("PDI"); and (4) the insurance providers for the condominium complex, Arthur J. Gallagher Risk Management Services, Inc., Tracy Williams, and Adams Insurance Services, Inc., (collectively the "Insurance Appellants"). We affirm.

## I. BACKGROUND

In July 2008, during construction of a condominium complex Sapphire owned, Hurricane Dolly hit South Padre Island, Texas causing damage to the complex. In November 2009, Sapphire filed its original petition in Cameron County against the "Insurance Appellants" for negligence and breach of contract seeking $3.5 million for water damage and $6 million for "soft costs."[2] Sapphire claimed that the Insurance Appellants had failed to procure insurance to adequately compensate Sapphire for any damage caused during the construction of the complex. According to Sapphire, the builder's risk policy that would have covered all of the damages, including soft costs, was allowed to expire before the hurricane hit, even though the construction of the complex had not been completed.[3]

---

[1] ZCA has not filed a brief in this appeal and has indicated that it has settled with Sapphire. However, ZCA has also informed this Court that it cannot produce settlement papers due to Sapphire's pending bankruptcy action.

[2] According to the Insurance Appellants, Sapphire recovered approximately $23 million in insurance proceeds due to the damages.

[3] Williams and Gallagher argue in their brief that it was Gary Leach, the owner and employee of GTL, who decided to allow the Builder's Risk policy to expire and transition to a permanent insurance policy eight days before Hurricane Dolly hit the Island on July 23, 2008. According to Williams and Gallagher, the Builder's Risk policy provided coverage for certain soft costs that Sapphire is attempting to recover from them. Williams and Gallagher also point out that there is evidence that the Builder's Risk

2

In July 2010, Sapphire filed its original petition against ZCA in Harris County, Texas, seeking damages for negligence and breach of contract in designing the condominium complex. Sapphire alleged that ZCA's negligence related to the design of the project that led to the water damage, and Sapphire sought $26.3 million in damages and $6 million for other expenses, delay costs, and lost sales revenue. ZCA designated GTL, CHP, PDI, and Atlas (collectively the "Construction Appellants") as responsible third parties.

On March 28, 2011, the trial court granted the Insurance Appellants' motion to designate the Construction Appellants as responsible third parties in the Cameron County lawsuit. Accordingly, Sapphire amended its Cameron County pleadings on April 11, 2011 to include the Construction Appellants as defendants. Sapphire alleged that the Construction Appellants were negligent in their respective duties because the louvers, mechanical/electrical rooms, and other areas in the upper floors of the condominium complex were not designed and constructed properly which resulted in water entering and damaging the building during the hurricane. Sapphire also sued the Construction Appellants for breach of contract claiming that the Construction Appellants had "agreed that all of their services would be of the standard and quality that prevails among reputable [professionals] engaged in similar practices in the State of Texas on projects similar to the Sapphire project" and had failed to do so.

---

policy needed to be extended to September 2008 because construction was behind schedule. They also point to evidence that Leach allegedly incorrectly informed Sapphire that the Builder's Risk policy could not be extended. According to Williams and Gallagher, the evidence shows that Leach did not extend the policy because he believed that it was too expensive. However, these arguments are not relevant to our discussion of whether the trial court erred in denying appellants' motions to compel arbitration.

In May 2011, all appellants filed motions to transfer venue and then filed motions to abate. The trial court denied the appellants' motions to transfer venue and abate. The parties do not challenge the trial court's rulings on these motions.

On August 11, 2011, the Construction Appellants filed a joint motion for continuance requesting a new trial date of May 7, 2012 and entry of a new docket control order subject to their motions to transfer venue in Cameron County.[4] On August 31, 2011, the Cameron County trial court granted the Construction Appellants' motion for continuance and set a trial date of April 2, 2012.

On October 13, 2011, all of the parties signed an agreed discovery control plan/scheduling order, agreeing to deadlines for designation of responsible third parties, joinder of new parties, designation of expert witnesses, discovery, dispositive motions and pleas, summary judgment motions, alternative dispute resolution, and amendments to pleadings. The parties also agreed to a pretrial conference or docket call on February 15, 2012 and to the previously set trial date of April 2, 2012.

On November 3, 2011, Adams filed a motion for summary judgment on the basis that Sapphire could not show that there was privity of contract with Adams because its contract for insurance was with GTL; therefore, Adams argued it owed no duty to an additional insured, such as Sapphire. Adams further argued that the evidence conclusively established that it did not enter into an oral or written contract with Sapphire to procure insurance for the project. The trial court granted the summary

_____

[4] The trial court had previously set a trial date of November 7, 2011.

4

judgment in favor of Adams with regards to Sapphire's claim for breach of contract but denied it with regards to Sapphire's negligence claim.[5]

GTL then served Sapphire with a written demand to arbitrate the issues raised in the lawsuit and filed its motion to compel arbitration and to stay the litigation pursuant to the Texas Arbitration Act (the "TAA") in Cameron County. GTL relied on a provision in its contract with Sapphire (the "General Contract") it claimed required arbitration of Sapphire's claims. All other appellants filed similar motions to compel arbitration and/or join GTL's motion to compel arbitration.

Sapphire challenged the motions to compel arbitration on two grounds: (1) only GTL had a contractual arbitration provision, so the other defendants had no right to compel arbitration; and (2) GTL's conduct of agreeing by Rule 11 to go to trial, together with the totality of the conduct of all of the parties in the case, constituted waiver of GTL's right to compel arbitration. Sapphire argued that it did not have a written contract with any of the appellants, except for GTL, and that its contract with GTL "specifically provide[d] that there are no third party beneficiaries and that non-signatories to the contract [could not] claim any rights under its terms, including the right to arbitrate." Sapphire also argued that GTL could not demand arbitration because a clause in the General Contract prohibited the parties from demanding arbitration after the statute of limitations had expired.[6] After a hearing on December 7, 2011, the trial court denied the appellants' motions to compel arbitration. The trial court did not state its basis for denying arbitration. This interlocutory appeal followed.

---

[5] Gallagher filed motions for summary judgment on no evidence and traditional grounds, which the trial court denied. These motions were filed prior to joinder of the Construction Appellants.

[6] The parties do not dispute that the applicable statute of limitations had expired when GTL sought arbitration.

5

## II. STANDARD OF REVIEW

We apply an abuse of discretion standard to the trial court's denial of appellants' motions to compel arbitration. *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 38 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). A trial court abuses its discretion when it acts arbitrarily or unreasonably and without reference to any guiding rules or principles. *Id.*

When the trial court's ruling under review depends on the resolution of underlying facts, we must defer to the trial court on its resolution of those facts and any credibility determinations that may have affected those resolutions. *Id.* Furthermore, we may not substitute our judgment for the trial court on those matters. *Id.* However, we must apply a de novo standard of review to the trial court's legal conclusions because a trial court has no discretion in determining what the law is, which law governs, or how to apply the law. *Id.*

## III. APPLICABLE LAW

Whether a valid arbitration agreement exists is a question of law and is therefore reviewed de novo. *In re C & H News Co.*, 133 S.W.3d 642, 645 (Tex. App.—Corpus Christi 2003, orig. proceeding); *Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386, 388 (Tex. App.—Houston [14th Dist.] 1998, pet. dism'd w.o.j.). The party seeking arbitration has the initial burden to prove, and the trial court must initially decide whether there is a valid arbitration agreement and if so, whether the claims fall within the scope of the arbitration agreement. *In re Kellogg Brown & Root*, 80 S.W.3d 611, 615 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding); *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (combined appeal &

6

orig. proceeding) ("The burden of showing one's status as a party or one's right to enforce, as with the overall burden of establishing the arbitration agreement's existence, is generally evidentiary."); *In re Koch Indus., Inc.*, 49 S.W.3d 439, 444 (Tex. App.—San Antonio 2001, orig. proceeding) ("The party seeking arbitration has the initial burden to present evidence of an arbitration agreement."). The initial burden of establishing the existence of a valid arbitration agreement includes proving that the entity seeking to enforce the arbitration agreement was a party to it or had the right to enforce the agreement notwithstanding. *Mohamed*, 89 S.W.3d at 836 (citing *Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 931 (Tex. App.—Houston [1st Dist.] 1996, no writ) (combined appeal & orig. proceeding); *Tex. Private Employment Ass'n v. Lyn-Jay Int'l, Inc.*, 888 S.W.2d 529, 531, 532 (Tex. App.—Houston [1st Dist.] 1994, no writ) (op. & op. on reh'g) (holding association itself was not party to arbitration agreement, set out in association's by-laws, that required association's members to arbitrate disputes among themselves)). If a valid arbitration agreement exists, the burden then shifts to the party resisting arbitration to show that the party seeking arbitration has waived its right to compel arbitration. *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 137 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Mohamed*, 89 S.W.3d at 835).

There is a strong presumption favoring arbitration; however that presumption does not apply to the initial determination of whether a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Arbitration agreements are interpreted under traditional contract principles. *Id.*

An obligation to arbitrate not only attaches to one who has personally signed the written arbitration agreement but may also bind a non-signatory under principles of

7

contract law and agency. *Id.* at 738. Generally, however, parties must sign arbitration agreements before being bound by them. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding); *see Grigson v. Creative Artists Agency*, L.L.C., 210 F.3d 524, 528 (5th Cir. 2000) (noting that "arbitration is a matter of contract and cannot, in general, be required for a matter involving an arbitration agreement non-signatory").

## III. GTL

By their first issue, appellants argue that the trial court erred in denying their motions to compel arbitration because there was a valid arbitration agreement in the General Contract. Sapphire acknowledges that it had a valid arbitration agreement with GTL in the General Contract; however, it argues that GTL has waived its right to compel arbitration for several reasons.

### A. Arbitration Agreement

Pursuant to section 4.6.1 of the General Contract, Sapphire and GTL agreed that "[a]ny Claim arising [o]ut of or related to the [General Contract] . . . shall . . . be subject to agreed private arbitration." It is undisputed and we agree that this is a valid arbitration agreement and that Sapphire's claims against GTL fall within the scope of this agreement. Therefore, the trial court could have only denied GTL's motion to compel arbitration on another basis.

Although we have concluded that GTL had a valid arbitration agreement with Sapphire, and the claims at issue were within the scope of the arbitration agreement, we may not yet sustain its sole issue because we have not yet considered Sapphire's defenses to the arbitration agreement. *See J.M. Davidson, Inc.*, 128 S.W.3d at 227 (stating that if the trial court finds a valid agreement, the burden shifts to the party

8

opposing arbitration to raise an affirmative defense to enforcing arbitration); *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 367 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding); *City of Alamo v. Garcia*, 878 S.W.2d 664, 665 (Tex. App.—Corpus Christi 1994, no writ). Accordingly, we will discuss whether any of Sapphire's defenses applied. *See In re C & H News Co.*, 133 S.W.3d at 645 (providing that once the trial court determines that a valid arbitration agreement exists and the claims fall within the agreement's scope, the party opposing arbitration has the burden of presenting evidence that prevents enforcement of the arbitration agreement).

## B. Running of the Statute of Limitations

Sapphire asserts that the trial court may have denied GTL's motion to compel arbitration because section 4.6.4 of the General Contract prohibited the parties from seeking arbitration if the statute of limitations for the claims made had expired. Sapphire states that in this case, the statute of limitations had expired when GTL filed its motion to compel arbitration. GTL does not contest that the statute of limitations for Sapphire's claims had expired when it filed its motion to compel arbitration. GTL instead contends that the parties did not intend for the statute of limitations to bar its demand for arbitration.[7]

Section 4.6.4 of the General Contract states:

A demand for arbitration shall be made within the time limits specified in Section 4.4.6 and 4.6.1 as applicable, and in other cases within a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings

---

[7] GTL also claims that Sapphire has waived this argument by not making it in the trial court. In its response to all of the motions to compel arbitration, Sapphire did make its statute of limitations argument. Therefore, Sapphire has not waived this argument, and the trial court may have determined that GTL waived arbitration based on section 4.6.4.

9

based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Section 13.7.

Section 4.4.6 had been crossed out by the parties. Section 4.6.1 states that any claims made pursuant to the General Contract shall be *subject to* arbitration after recommendation by the architect or 30 days after submission of the Claim to the architect (emphasis added).

Section 13.7 is entitled, "Commencement of Statutory Limitation Period." Section 13.7.1 set out three possible scenarios—before substantial completion, between substantial completion and final certificate for payment, and after final certificate for payment—and the date the statute of limitations begins to run in those scenarios. Thus, we agree with Sapphire that section 13.7 provided a method of determining the commencement of the limitations periods, depending on when the Contractor's act or omission occurred during the building of the condominiums.

However, as Sapphire points out, section 13.7 was crossed out and thus deleted from the General Contract. Section 13.7 was not replaced. GTL argues that because of this deletion, the contract no longer prohibits arbitration of claims when the statute of limitations has expired. Sapphire responds that the parties' intent to prohibit the compulsion of arbitration after the statute of limitations had run is evident because they did not delete section 4.6.4 of the contract. Moreover, Sapphire notes that none of the parties dispute that Sapphire's negligence claim accrued when Hurricane Dolly hit the Island in July 2008 or that the statute of limitations had run when appellants filed their motions to compel arbitration.

It appears from our reading of section 4.6.4 that the parties did not want to allow a demand for arbitration to occur outside the applicable statute of limitations period.

Although the parties deleted section 13.7, the parties did not delete section 4.6.4, and it must be given some meaning. *See J.M. Davidson, Inc.*, 128 S.W.3d at 229 ("In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. To achieve this objective, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."). Therefore, because the parties deleted section 13.7, it is clear the reference in section 4.6.4 to that section no longer applies. *See Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005) ("In construing a contract, we must ascertain and give effect to the parties' intentions as expressed in the document[,]" and "[w]e consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement."); *In re Bayer Materialscience, L.L.C.*, 265 S.W.3d 452, 454–56 (Tex. App.—Houston [1st Dist.] 2007) (orig. proceeding) ("Arbitration is a creature of contract, and parties seeking to compel arbitration must rely upon an agreement to arbitrate. If such an agreement exists, then the law favors enforcing it. But the law favoring arbitration does not go so far as to create an obligation to arbitrate where none exists. Thus, arbitration agreements are 'as enforceable as other contracts, but not more so.'") (internal citations omitted).

Thus, harmonizing and giving effect to all of the provisions of the General Contract, we interpret section 4.6.4 to say, "in no event shall [a demand for arbitration] be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations." Therefore, we conclude

11

that pursuant to section 4.6.4 of the General Contract, any party wishing to compel arbitration must have done so before the statute of limitations expired. Here, the parties do not dispute that when GTL filed its motion to compel arbitration, the statute of limitations had expired.

In the alternative, GTL states that pursuant to former section 33.004 of the Texas Practice and Remedies Code, Sapphire filed suit against it after the statutory limitations period had expired; therefore, it was impossible for GTL to have filed its motion to compel arbitration before the statute of limitations had run. Former section 33.004 of the civil practice and remedies code allowed a plaintiff to join a designated responsible third party, "even though joinder would otherwise be barred by limitations."[8] In this case, the Insurance Appellants designated GTL as a responsible third-party, and in response, Sapphire, pursuant to section 33.004, amended its pleadings and joined GTL as a defendant after the statute of limitation had expired.

There is nothing in the General Contract showing that when the parties signed it they contemplated allowing an exception to section 4.6.4 on the basis that a party has been joined in a suit after the statute of limitations had expired. If the parties had so intended, they would have included a provision in the General Contract making such an exception. *J.M. Davidson, Inc.*, 128 S.W.3d at 227. GTL responds that the intent of the parties was to allow for a reasonable time to demand arbitration, which is shown by the parties' deletion of section 13.7 of the General Contract. Therefore, GTL argues the demand for arbitration was not dependent on any statute of limitations periods.

---

[8] This section was repealed by the legislature and the legislature has restricted a defendants' future ability to designate responsible third parties after the applicable statute of limitations period has run.

12

However, GTL cites nothing in the General Contract, and we find nothing supporting such an interpretation of the General Contract.[9] Accordingly, GTL was not excused from demanding arbitration before the applicable statute of limitations expired. We conclude that the trial court did not abuse its discretion by denying GTL's motion to compel arbitration. We overrule GTL's sole issue on appeal.

## IV. THE NON-SIGNATORY APPELLANTS

By their first, second, and third issues, CHP, Atlas, PDI, and the Insurance Appellants (collectively the "Non-Signatory Appellants") argue that they can compel arbitration based on a variety of theories as set out below.[10] Sapphire responds that no appellant other than GTL can claim a right to compel arbitration pursuant to the General Contract and there is no other basis for the Non-Signatory Appellants to compel arbitration.

## A. Right to Compel Arbitration under the General Contract

By their first issue, CHP, PDI, and the Insurance Appellants first argue that although they are non-signatories to the General Contract, they are entitled to compel arbitration because section 4.6.1 states:

> Any Claim arising [out] of or related to the Contract, except those waived as provided for in Section 4.3.10, 9.10.5, shall, after recommendation by the Architect or 30 days after submission of the Claim to the Architect, be

---

[9] We recognize that the parties entered into a valid arbitration agreement pursuant to section 4.6.6; however, parties to a contract are free to determine the terms that they are bound by and our only duty is to ascertain and give effect to the parties' intent as expressed by the document. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). As stated above, we construe section 4.6.4 as limiting the parties' ability to demand arbitration once the applicable statute of limitations has expired. Moreover, there is nothing in the contract itself indicating that the parties' intended for there to be any exceptions including that the parties be allowed a reasonable time after the claim has arisen to seek arbitration. *See Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986) (providing that we must determine the parties' intentions as expressed within the four corners of the instrument).

[10] We have renumbered the Non-Signatory Appellants' issues for purposes of this appeal.

13

subject to agreed private arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by the process provided for in Section 4.5.

CHP argues that the work it performed as a subcontractor arises out of and relates to Sapphire's contract with GTL. PDI also asserts that once Sapphire conceded that there was a valid arbitration agreement with GTL, the burden shifted to Sapphire to show that it waived arbitration. However, section 1.1.2 of the General Contract contradicts such a conclusion. It states:

> The [General] Contract Documents form the Contract for Construction. The [General] Contract represents the entire and integrated agreement between [Sapphire and GTL] and supersedes prior negotiations, representations or agreements, either written or oral. The [General] Contract may be amended or modified only by a Modification. *The [General] Contract shall not be construed to create a contractual relationship of any kind* (1) between the Architect and [GTL], (2) *between [Sapphire] and a Subcontractor or Sub-subcontractor*, (3) between [Sapphire] and Architect or (4) between any persons or entities other than [Sapphire and GTL]. The Architect shall be entitled to performance and enforcement of obligations under the [General] Contract intended to facilitate performance of the Architect's duties.

(Emphasis added). This language clearly indicates that GTL and Sapphire agreed that the General Contract could not be construed as providing any contractual relationship between Sapphire and the subcontractors, such as Atlas, PDI, and CHP. Furthermore, this language also clearly indicates that the General Contract was not to be construed as creating a contractual relationship between any other parties other than GTL and Sapphire. Therefore, we disagree with appellants that Sapphire agreed to entitle non-signatories to the General Contract the right to compel arbitration.

Moreover, as non-signatories to the General Contract, the Non-Signatory Appellants had the initial burden of showing that each of them had a valid arbitration agreement with Sapphire, and they could not prevail merely by showing that a valid

14

arbitration agreement existed between GTL and Sapphire. *See Mohamed*, 89 S.W.3d at 836; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 171.001 (setting out that a written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that arises between the parties to the agreement). As such, the Non-Signatory Appellants had to show that an accepted theory applies to this case allowing them to enforce the arbitration agreement in the General Contract. *See Cappadonna Elec. Mgmt. v. Cameron County*, 180 S.W.3d 364, 371 (Tex. App.—Corpus Christi 2005, no pet.). Therefore, to the extent that the Non-Signatory Appellants' argument relies on a theory that they could compel Sapphire to go to arbitration merely because Sapphire had a valid arbitration agreement with GTL, we conclude that argument is without merit.

The Insurance Appellants and CHP also argue that section 4.6.6 of the General Contract requires joinder of the Non-Signatory Appellants in the arbitration proceeding. Section 4.6.6 of the General Contract states:

> Limitation on Consolidation or Joinder. ~~No~~An arbitration arising or out of or relating to the Contract ~~shall~~ may include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or ~~consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. No~~ consultants. <u>Any</u> arbitration ~~shall~~ <u>may</u> include, by consolidation or joinder or in any other manner, parties other than the Owner, ~~Contractor~~ <u>Contractor, a Subcontractor</u>, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required of complete relief is to be accorded in arbitration. No person or entity other than the Owner, Contractor, or Subcontractor, or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a Claim not described therein or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other

agreements to arbitrate with an additional person or entity duly consented by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

(Emphasis and deletions in orginal).

We disagree that section 4.6.6 requires joinder of non-signatory third-parties. This section of the General Contract merely allows for the consolidation or the joinder of third-parties in the arbitration proceeding. It does not give non-signatories a right to compel arbitration. Accordingly, the trial court properly concluded that the Non-Signatory Appellants could not compel arbitration based on section 4.6.6 of the General Contract. We overrule appellants' first issue to the extent they argue that the General Contract gave non-signatories a right to compel Sapphire to go to arbitration.

## B. Incorporation by Reference

Next, by their second issue, PDI and Atlas claim that their subcontracts were incorporated into the General Contract. PDI and Atlas further argue that the General Contract incorporated their subcontracts.

"Under the doctrine of incorporation by reference, where one contract refers to another contract or instrument, the second document may properly constitute part of the original contract." *Cappadonna Elec. Mgmt.*, 180 S.W.3d at 371 (citing *City of Port Isabel v. Shiba*, 976 S.W.2d 856, 858 (Tex. App.—Corpus Christi 1998, pet. denied)). Questions of contract interpretation are often raised in relation to disputes concerning the doctrine of incorporation by reference. *Id.* The primary concern of the appellate court in construing the subcontractors' rights and duties under their subcontracts is to ascertain and give effect to the intentions of the parties as expressed in the subcontract. *See Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998).

16

"To ascertain the true intentions of the parties to the subcontract, we examine the entire agreement in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless." *Cappadonna Elec. Mgmt.*, 180 S.W.3d at 371.

First, Atlas claims that the general terms of the General Contract, specifically section 5.3.1, provides that each subcontractor is bound by the contract. 5.3.1 states:

> By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for the safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, **the benefit of all rights, remedies, and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner . . .** The Contractor shall make available to each proposed Subcontractor, prior to the execution of the Subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound. . . .

(Emphasis added).

We disagree with Atlas's interpretation of this clause. This clause relates to GTL's relationship with the subcontractors and requires that the subcontractors assume the "obligations and responsibilities, including the responsibility for the safety of the Subcontractor's Work" that GTL is bound to provide under the General Contract to Sapphire. This clause imposes a requirement that each subcontract will preserve and protect the rights of Sapphire and the architect under the General Contract. This clause shows that the intent of Sapphire and GTL was to ensure that Sapphire's rights will not

17

be prejudiced under the subcontracts. The clause also gives the subcontractors the benefit of all rights, remedies, and redress *against GTL* that GTL had against Sapphire under the General Contract. (Emphasis added). It does not, however, provide that the subcontractors have the benefits of all rights, remedies, and redress *against Sapphire* that GTL has under the General Contract. (Emphasis added). Moreover, this clause does not mention arbitration and there is nothing in it showing Sapphire's intent was to agree to arbitrate its claims against the subcontractors. We conclude that section 5.3.1 of the General Contract does not bind Sapphire to arbitration with the subcontractors.

Next, Atlas argues that the General Contract incorporated by reference its subcontract and the subcontract has a valid arbitration clause; therefore, it has a right to compel arbitration with Sapphire. According to Atlas, incorporation of a subcontract into the prime contract is the industry norm. Atlas points to section 11.2 of its subcontract with GTL, which states:

> Should GTL enter into arbitration with [Sapphire] or others regarding matters relating to this Subcontract, Subcontractor will agree, if requested by GTL to consolidation of this arbitration with GTL's arbitration with [Sapphire], but in any event, Subcontractor shall be bound by the result of the arbitration with [Sapphire] to the same degree as GTL.

This provision provides that Atlas must agree to consolidation of arbitration if requested by GTL in the event that GTL enters arbitration with Sapphire and that Atlas is bound by the results of any arbitration between GTL and Sapphire. However, there is nothing in this clause that binds Sapphire to arbitration with the subcontractors. So, even assuming without deciding that the General Contract incorporated the subcontract, section 11.2 does not show that Sapphire's intent was to arbitrate its claims against the subcontractors.

18

Finally, Atlas argues that the intent of Sapphire and GTL was to incorporate the General Contract into its subcontract with GTL. Therefore, Atlas claims that the subcontractors were bound by section 4.6.1 of the General Contract requiring arbitration of any claim arising out of or related to the contract. However, section 12.13 of Atlas's subcontract with GTL states: "Notwithstanding any provision to the contrary contained in the Contract Documents, Subcontractor expressly agrees that this Subcontract does not contain a provision for the mandatory arbitration of disputes, nor does it incorporate by reference such provision if such is contained in the [General Contract]." This clause in the subcontract expressly rejects incorporation of the arbitration clause of the General Contract. It further provides that the parties have not agreed to mandatory arbitration in the subcontract; thus foreclosing any of Atlas's arguments that a valid arbitration agreement existed between it and GTL. Thus, even assuming that the subcontract was incorporated into the General Contract or vice versa, this clause negates the incorporation of any arbitration provisions in the Contract Documents and states that the subcontractor has expressly agreed that there are no provisions in the subcontract requiring mandatory arbitration of disputes.

PDI also argues its subcontract with GTL required the parties to arbitrate any disputes. However, PDI does not explain how the General Contract incorporated the subcontract. *See* TEX. R. APP. P. 38.1(i). Accordingly, we are unable to conclude that under the doctrine of incorporation by reference, PDI can compel Sapphire to arbitration.

We conclude that Sapphire was not bound to arbitration with Atlas and PDI based on the theory of incorporation by reference. Thus, the trial court properly rejected

19

that theory as a ground for allowing the Non-Signatory Appellants to compel arbitration. We overrule appellants' second issue.

## C. Equitable Estoppel

By their third issue, Williams and Gallagher also argue that their motion to compel arbitration should be granted because the doctrine of equitable estoppel allows "a non-signatory-to-an-arbitration-agreement-defendant [to] compel arbitration against a signatory-plaintiff." Williams and Gallagher rely on the arbitration clause contained in the General Contract. Williams and Gallagher cite a case from United States Court of Appeals for the Fifth Circuit, *Grigson v. Creative Artists Agency*, quoted by the Texas Supreme Court in *Meyer v. WMCO-GP LLC*, explaining, that "the claimant cannot 'have it both ways': it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." 211 S.W.3d 302, 306 (citing *Grigson*, 210 F.3d at 528).

Equitable estoppel allows a non-signatory to compel arbitration if the nature of the underlying claims requires the signatory to rely on the terms of the written agreement containing the arbitration provision in asserting its claims against the non-signatory. *In re Hartigan*, 107 S.W.3d 684, 691 (Tex. App.—San Antonio 2003, orig. proceeding [mand. denied]). In *Neatherlin Homes, Inc. v. Love*, we stated that "[u]nder certain circumstances, a party to an arbitration agreement may be compelled to arbitrate claims with a nonparty if the controversy arises from a contract containing an arbitration clause." *Neatherlin Homes, Inc. v. Love*, Nos. 13-06-328-CV & 13-06-411-CV, 2007 Tex. App. LEXIS 1788, at *27 (Tex. App.—Corpus Christi Mar. 8, 2007, orig.

proceeding) (mem. op) (citing *Meyer v. WMCO-GP LLC*, 211 S.W.3d 302, 306–07 (Tex. 2006); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 678; *see In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 760 (Tex. 2006) (per curiam); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 738–39; *see also Merrill Lynch Trust Co. FSB*, 159 S.W.3d at 168 ("A party that is not a signatory to an arbitration agreement may enforce it if the party falls into a recognized exception under general equitable or contract law that would allow such enforcement.")). We cited *Meyer v. WMCO-GP LLC*, which states, "sometimes a person who is not a party to the agreement can compel arbitration with one who is, and vice versa. We have held that a person who seeks by his claim 'to derive a direct benefit from the contract containing the arbitration provision' may be equitably estopped from refusing arbitration." 211 S.W.3d at 305.

Sapphire's claims against the Insurance Appellants are clearly not based on the General Contract. In the General Contract, GTL agreed to build the condominium complex. Sapphire does not contend that the Insurance Appellants breached the General Contract by not properly constructing the complex. Instead, Sapphire claims that the Insurance Appellants failed to procure the appropriate type of insurance.[11] This claim is not related to the construction of the complex. Accordingly, we overrule the Insurance Appellants' third issue to the extent that they argue that the theory of equitable estoppel applies in this case.

---

[11] Sapphire claimed in its petition that the Insurance Appellants had contracted with Sapphire to procure adequate insurance to protect Sapphire while the Sapphire condominiums were being built and that the Insurance Appellants breached that agreement. Sapphire does not claim that the Insurance Appellants breached the General Contract in any way.

By its third issue, Atlas also relies on the theory of equitable estoppel. Atlas argues that Sapphire is seeking the benefits of the subcontract and relying on it expressly; therefore, Sapphire cannot deny the applicability of the arbitration agreement contained in the subcontract. The subcontract on which Atlas relies is between GTL and Atlas.

The flaw in this argument is that the subcontract does not contain a valid arbitration agreement. We acknowledge that section 11.1 of the subcontract states, "All claims, disputes and other matters in question arising out of, or relating to, this Subcontract or the breach thereof shall be decided in arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association unless the parties mutually agree otherwise." However, as stated above, section 12.13 of Atlas's subcontract with GTL also states: "Notwithstanding any provision to the contrary contained in the Contract Documents, *Subcontractor expressly agrees that this Subcontract does not contain a provision for the mandatory arbitration of disputes*, nor does it incorporate by reference such provision if such is contained in the [General Contract]." (Emphasis added). Atlas does not explain how the language contained in section 12.13 does not apply; thus, nullifying section 11.1's arbitration clause. *See* TEX. R. APP. P. 38.1(i). Therefore, we are unable to conclude that the trial court should have determined that the subcontract between Atlas and GTL contained a valid arbitration agreement.[12] We overrule appellants' third issue.

---

[12] We note that the subcontract between GTL and PDI contained the exact same provisions. Thus, to the extent PDI intended to make a similar argument, we conclude it is without merit.

## V. Conclusion

We conclude that the trial court did not abuse its discretion when it denied the appellants' motions to compel arbitration. Therefore, we affirm the trial court's denial of appellants' motions to compel arbitration.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
23rd day of May, 2013.